IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT A. DREW )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>KIM SMITH, *et al.* )<br>    Defendant. ) | Civil Action No. 14-266 Erie<br><br>District Judge Rothstein<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Is it respectfully recommended that Plaintiff's motion for partial summary judgment [ECF No. 100] be denied.

### II. REPORT

#### A. Relevant Procedural History

Plaintiff Scott Drew initiated this civil rights action on October 23, 2014, by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12132 *et seq.* ("ADA"); and the Rehabilitation Act of 1973, 29 U.S.C.A. § 794(a) *et seq.*, ("RA"). [ECF No. 1]. At the time of filing suit, Plaintiff was an inmate incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest").[1] Plaintiff subsequently filed an amended complaint [ECF No. 52], and a second amended complaint [ECF No. 78], the latter of which is deemed to be the operative pleading in this case. Named as Defendants in the second amended complaint are: Kim Smith, a Health Care Administrator at SCI-Forest ("Smith"); Nancy McGarvie, a former Medical Director at SCI-Forest ("McGarvie");

---

[1] Plaintiff has since been released from incarceration and currently resides in Detroit, Michigan.

Rami Abraham, a former Medical Director at SCI-Forest ("Abraham"); Dr. Herbik, Wexford Regional Medical Director ("Herbik"); A. Kop, Hearing Examiner at SCI-Forest ("Kop"); and Major Paul Ennis, Security Supervisor at SCI-Forest ("Ennis").[2] Defendants Herbik, Kop, and Ennis, were later voluntarily dismissed from this case by Plaintiff [ECF Nos. 94, 95]. Thus, the only remaining Defendants are Smith, McGarvie, and Abraham.[3]

Plaintiff alleges that the remaining Defendants failed to provide Plaintiff "with necessary accommodations for [his] pain and suffering and physical disabilities during [Plaintiff's] incarceration at SCI Forest." (ECF No. 78, at ¶1). In particular, Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages, for alleged discrimination against him on the basis of his "stenosis of the spine, which has left plaintiff in a wheelchair and in constant pain and suffering." (Id. at ¶ 2). In addition, Plaintiff claims that Defendants were deliberately indifferent to his persistent pain in violation of the eighth amendment to the United States Constitution.[4]

On January 27, 2017, Plaintiff filed a motion for partial summary judgment as to his Eighth Amendment claim against Defendant Smith.[5] [ECF No. 100]. Defendant Smith has since

---

[2] Although named in the caption of the second amended complaint, Defendant John Wetzel was voluntarily dismissed from the case. (ECF No. 78, Second Amended Complaint, at ¶ 7e).

[3] While Defendant Smith was served in this case in February 2016, service of Defendants McGarvie and Abraham has been significantly delayed, such that Defendant McGarvie was only recently served and is not due to file a response to the second amended complaint until on or before August 1, 2017. Abraham remains unserved, even though the docket reflects that service documents were mailed to him by the U.S. Marshal on May 4, 2017. [ECF No. 111].

[4] Plaintiff also complains of issues related to the repairs to his wheelchair. However, as of September 29, 2014, Plaintiff was provided a new wheelchair and withdrew his grievance. (ECF No. 31-1, at p. 55). This issue is, therefore, moot.

[5] While Plaintiff's position as to his remaining claims is not entirely clear, to the extent Plaintiff contends he has stated ADA or RA claims against Defendant Kim Smith, and/or Defendants McGarvie and Abraham, such claims

filed a response in opposition to Plaintiff's motion [ECF No. 114], together with a concise statement of material facts and an appendix of exhibits. [ECF Nos. 115, 116]. This matter is now ripe for consideration.

**B.     Relevant Factual History**[6]

In February 2012, Plaintiff appeared at sick call seeking changes to his medication regimen for back pain. The requested changes were delayed pending the results of a neurology consult. (ECF No. 116-2, at pp. 4-5). In March 2012, Plaintiff directed a Request to Staff Member form to Defendant Smith, requesting resolution of issues related to a hernia and an increase in his dosage of Neurontin. (ECF No. 87, at p. 10). Defendant Smith responded that Plaintiff's neurology consult would "be conducted soon," and that medical staff was awaiting the results of the consult before making any changes to his current treatment.

Plaintiff's neurology consult occurred in November 2012, and revealed that Plaintiff had no obvious weakness, and was able to ambulate. In addition, his reflexes were responsive and

---

cannot be sustained. First, these defendants are not "public entities" subject to suit under the ADA or the Rehabilitation Act. See 42 U.S.C. § 12132 ("Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (emphasis added)); 42 U.S.C. § 12131 (defining "public entity" as (a) any State or local government; (b) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (c) the National Railroad Passenger Corporation, and any other commuter authority).

Second, with respect to Kim Smith, Title II of the ADA does not provide for suits against state officers in their individual capacities. See Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir.1999) (en banc). And, finally, with respect to Defendants McGarvie and Abraham, who are employees of a private corporation, the United States Court of Appeals for the Third Circuit has held that the ADA and RA cannot form the basis of individual liability against employees of private contractors. See Matthews v. Pennsylvania Dep't of Corr., 613 Fed. Appx. 163, 169–70 (3d Cir. 2015) ("we agree with the Court of Appeals for the Eleventh Circuit that 'a private corporation is not a public entity merely because it contracts with a public entity to provide some service.' Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir.2010); see also Green v. City of New York, 465 F.3d 65, 79 (2d Cir.2006) (holding that a private hospital performing government services by contract is not an "instrumentality" of the government); Cox v. Jackson, 579 F.Supp.2d 831, 852 (E.D.Mich.2008) (holding that a private medical provider with a contract to serve a prison was not a government entity). We will therefore affirm the dismissal of all statutory claims…."). See also Bowens v. Wetzel, 674 Fed. Appx. 133, 136 (3d Cir. 2017).

[6] Because Plaintiff seeks summary judgment solely against Defendant Smith, his allegations pertaining to Defendant Smith are of primary concern here.

3

symmetrical. (ECF No. 99, at p. 11). The neurologist discussed treatment options, including "trying an epidural steroid injection versus surgical intervention." Plaintiff was informed that surgery may not improve all of his symptoms, including ongoing numbness, but that he "may find relief with the symptoms that occur with standing and walking." (Id.) The neurologist noted Plaintiff's agreement to undergo a lumbar epidural injection, and the recommendation that "[i]f his symptoms do not respond then we will consider a bilateral L3-L4 and L4-L5 micro-foraminotomy." (Id.)

On November 26, 2012, Plaintiff was seen at SCI-Forest sick call. The records indicate that "after considering his options, he desires the surgery and does not want the steroid injection." (ECF No. 116-2, at p. 6). As a follow up to the neurology consultation, on November 28, 2012, Defendant McGarvie submitted a Consultation Record indicating her approval for a lumbar epidural steroid injection. This option was rejected by Paul Noel, M.D., State Medical Director, in favor of an Alternate Treatment Plan. (ECF No. 116-2, at p. 1). Plaintiff thereafter repeatedly rejected lumbar steroid injections as a treatment for his pain. (ECF No. 116-2, at pp. 7, 9).

A physical examination was conducted by Defendant McGarvie on January 9, 2013, after which Defendant McGarvie reviewed Plaintiff's case with Drs. Mark Baker and Neal Fischer at Wexford Health Care on January 11, 2013. On review, surgery was rejected because Plaintiff refused conservative treatment, and it was noted that his prior surgery failed due to Plaintiff's refusal to cooperate with post-surgical care. (ECF No. 116-2, at p. 2). Given Plaintiff's negative objective exam findings, SCI-Forest medical staff, including Defendant McGarvie, determined that compliance with physical therapy and conservative treatment would be required before scheduling a surgical option. (ECF No. 116-2, at pp. 6-7).

Plaintiff continued to schedule sick call visits, and to complain of back pain, requesting an increase in medication. On March 21, 2013, Defendant McGarvie added Cymbalta for pain control, and noted that Plaintiff continued to "need[] conservative treatment." (Id.: ECF No. 99, at p. 13). In May 2013, Defendant Smith responded to an inquiry sent by Plaintiff to the facility superintendent. (ECF No. 87, at p. 16). Defendant Smith explained that her review of his records revealed that Plaintiff's treatment plan included medication, physical therapy and an exercise plan, and that Plaintiff was not yet complying with his medication regimen. Based upon the treatment plan in place, there was no indication that an outside consultation was needed. Id.

Plaintiff was seen at sick call in May and June 2013, and was encouraged to take medication as prescribed, which he appeared to have failed to do, and to continue physical therapy, exercise, and conservative treatments. (Id. at pp. 10-11; ECF 31-1, at pp. 14-15). Plaintiff filed a grievance on July 3, 2013, requesting surgery and stating that conservative treatment had been attempted but was not successful in alleviating his pain. Defendant Smith responded to the grievance, and noted that her review of his records revealed that his condition was receiving ongoing treatment with conservative therapy, medication, and exercise recommendations, but Plaintiff was not taking his pain medication as prescribed. (ECF No. 31-1, at p. 10; ECF No. 99, at p. 37). Defendant Smith further reported to Plaintiff that his condition had been reviewed by Wexford Health's regional medical director and review team, and that Plaintiff's full compliance with the existing treatment plan was deemed necessary before any changes would be considered.

A new MRI was conducted in November 2013, which showed there was a "grossly unchanged postoperative appearance of the MRI spine status post multilevel lumbar laminectomy. Mild to moderate central canal stenosis at L3-L4 and L4-L5 is grossly unchanged.

5

Severe neural foraminal narrowing with associated exiting nerve root impingement is grossly unchanged bilaterally at L3-L4 as well on the right ride at L4-L5." (ECF No. 99, at p. 17).

Plaintiff was next seen at sick call by Dr. Moussa in December 2013, requesting an increase in pain medication. Physician notes indicate that Plaintiff did not appear in distress or discomfort, but was "sedated from Neurontin." By March 19, 2014, Dr. Moussa observed that Plaintiff "is obviously a drug abuser." (ECF No. 116-2, at p. 13). On March 21, 2014, Plaintiff was seen at sick call again, this time by Defendant Abraham. Defendant Abraham determined that a neurological consult might be necessary; however, a consult was denied because physical therapy documentation showed "poor effort." (Id. at 14). Plaintiff continued to complain of chronic back pain, and on April 1, 2014, Defendant Abraham increased Plaintiff's Neurontin, but discontinued the Elavil, because Plaintiff had refused 22 of 31 doses the prior month. (ECF No. 31-1, at p. 43). No other changes were ordered at the time, and Defendant Abraham noted that, again, compliance and "a good effort" with physical therapy were required before additional treatment would be considered. (ECF No. 116-2, at p. 15).

Defendant Smith received Grievance No. 504325, dated April 7, 2014, from Plaintiff, complaining that Defendant Abraham increased his medication on April 1, 2014, but without explanation, his medication had been discontinued. Defendant Smith reviewed Plaintiff's chart and denied Plaintiff's grievance, stating that "[p]er Dr. Harewood inmate Drew has had 5 laminectomies and is not a surgical candidate. A conservative treatment plan is recommended at this time." (ECF No. 31-1, at p. 43). In addition, Defendant Smith responded that, on March 19, 2014, Dr. Moussa indicated drug seeking behavior, but had renewed Plaintiff's Elavil prescription and sought to reduce the dose of Neurontin to 600 mg three times per day. Defendant Smith's investigation revealed that when Dr. Abraham increased the dosage on April

6

1, 2014, to 900 mg three times per day, the prior order had not been discontinued in the computer system, and so the new prescription was denied by the Wexford Regional Medical Director as duplicative. Defendant Smith noted that Plaintiff was seen by the physical therapist on April 14, 2014, and was provided instructions for exercises to increase flexibility of his lower back. Plaintiff was seen again by Defendant Abraham on April 21, 2014, and instructed to continue with his current exercise regimen. (ECF No. 31-1, at p. 43; ECF No. 99, at p. 29). Accordingly, Defendant Smith concluded that Plaintiff's medical needs were being met.

In November 2014, Plaintiff was seen by Dr. Vassiliev, and received a caudal epidural steroid injection. (ECF No. 99, at p. 17). Dr. Vassiliev also reviewed Plaintiff's MRI of his lumbar spine from November 2013, showing no changes in his condition, and determined that Plaintiff was suffering from postlaminectomy syndrome and lumbrosacral radiculopathy. He believed that the proposed "caudal epidural steroid injection will serve him the best at this point." (Id.)

Plaintiff submitted Grievance No. 551895 on February 8, 2015, concerning his request to be seen by a neurologist to review an early February 2015 MRI. (ECF No. 87, at p. 26). In response, Defendant Smith reviewed Plaintiff's medical records, which were also submitted to Dr. Alpert, the on-site medical director, and Dr. Herbik, the regional medical director. The medical review team concluded that there were no indications for a neurosurgery consult. Plaintiff was receiving pain management medication with Tylenol #3 and a long-term prescription for Pamelor. Plaintiff's grievance also challenged his placement in the Restricted Housing Unit due to a positive drug screening. Because Plaintiff was taking prescribed medication, he sought assistance from medical personnel so that his housing placement could be rectified. Defendant Smith denied Plaintiff's grievance, finding that he was receiving appropriate

7

treatment for his pain, which could be provided at SCI-Forest without a neurological consult, but did not comment on the housing issue. An appeal of the grievance response indicates that procedural changes had been implemented to avoid mistaken disciplinary measures for those who are receiving narcotics for pain. (ECF 72-1, at p. 6).

In April 2015, Dr. Alpert reviewed the February 2015 MRI of Plaintiff's lower back, which again revealed that Plaintiff had "no new changes from 2013." (ECF No. 116-2, at p. 16). Plaintiff was prescribed Tylenol 3 for pain management, and it was noted that Plaintiff rejected physical therapy and demanded surgery. Dr. Alpert noted that "[Plaintiff] does not take 'no' for an answer despite the objective evidence for - new disease process." (ECF No. 116-2, at p. 16).

Plaintiff was next seen in November 2015, and for the first time, atrophy was noted, as were other objective signs of disease. (Id.). Plaintiff was referred for x-rays on March 2, 2016, which revealed mild scoliosis, narrowing of L3-L4, L4-L5 and L5-S1 disc spaces, and vacuum disc phenomenon at L4-5. (ECF No. 99, at p. 35). A neurology consult was scheduled and, on June 23, 2016, Plaintiff was seen by Dr. Baghai at Allegheny General Hospital. Dr. Baghai's summary of patient history indicates that Plaintiff has had five lumbar spine surgeries, and that lumbar epidural injections had been recommended four years earlier. Plaintiff stated that he had undergone at least 2 epidural steroid injections, and each provided minimal short-term relief. Dr. Baghai reviewed the February 2015 MRI and noted "probably central disc herniation at the L4-5 level with bilateral L3-4 foraminal stenosis, with postoperative changes in the lower lumbar." (ECF No. 99, at p. 19). Based on his review, Dr. Baghai determined that Plaintiff should undergo an updated MRI "to make a surgical plan as conservative treatments have failed." In particular, Dr. Baghai noted: "Surgery will most likely need to address the L4-5 and the L3-4 levels. After review of the updated MRI a definitive decision will be made. It was discussed with the patient

that some of the longstanding symptoms of numbness and weakness may not improve even with surgery." (Id.)

A new MRI was completed and reviewed with Plaintiff on August 4, 2016. The MRI showed postoperative changes "and most likely compression at the foraminal level bilaterally at L3-4 and L4-5 level." (ECF 99, at p. 25). His physical exam showed that Plaintiff "is able to move his legs without any difficulty, no weakness of any muscle group in the lower extremities … [s]ensation is intact[,] deep tendon reflexes are symmetrical." (Id.) Surgery was performed on September 21, 2016. A bulging disc was identified, and nerve root decompression was completed. (ECF No. 100, at p. 6).

### C. Standards of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

9

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson., 477 U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

### 2. *Pro Se* Pleadings

*Pro se* pleadings and filings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A petition prepared by a prisoner ... may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997) (overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)

11

(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same).

When considering a motion for summary judgment, however, the traditional flexibility toward pro se pleadings does not require the Court to indulge evidentiary deficiencies. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 249 (3d Cir. 2013), citing Brooks v. Kyler, 204 F.3d 102, 108 n. 7 (3d Cir.2000) (indicating that pro se litigants still must present at least affidavits to avoid summary judgment). Accordingly, because Plaintiff is a *pro se* litigant, this Court will consider the facts and make inferences where it is appropriate.

### D. Discussion

Plaintiff summarizes his claims against Defendant Smith as follows:

> [I]n September of 2011 and up to this present day …, defendant Kim Smith denied treatment even when ordered by outside doctors. Plaintiff has been taken off of long term medications without properly being tapered down as policy of all long term and psychotropic medications. Plaintiff has been refused follow up treatment and Kim Smith misrepresented facts that lead to plaintiff's continual pain and suffering due to plaintiff's "stenosis of the spine" and now "mild scoliosis.

(ECF No. 100, at p. 12; ECF No. 106, at p. 1). Plaintiff alleges that this conduct is continual and deliberate "in an effort to keep plaintiff in his severe pain and suffering." Id.

"The Eighth Amendment prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. "For instance, Estelle makes clear that if 'unnecessary and

12

wanton infliction of pain,' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. In this case, given Plaintiff's prior back surgeries, including one completed in the fall of 2011 while Plaintiff was incarcerated at SCI-Forest, it is accepted that Plaintiff presents a serious medical condition.

In order to find deliberate indifference sufficient to support an Eighth Amendment claim, however, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009).

With regard to claims against non-medical prison officials like Defendant Smith,[7] however, the Third Circuit has held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). In Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004), the Third Circuit expanded upon its reasoning in Durmer, as follows:

> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

---

[7] As Health Care Administrator, Defendant Smith is considered a non-medical prison official in the context of a Section 1983 denial of medical care claim. See Spencer v. Beard, 2010 WL 608276, *4 n. 5 (W.D.Pa. Feb. 17, 2010), citing Hull v. Dotter, 1997 WL 327551, *4 (E.D.Pa. June 12, 1997); Freed v. Horn, 1995 WL 710529, *3-4 (E.D.Pa. Dec. 1, 1995).

13

The Court in Spruill explained further that, "[i]f a prisoner is under the care of medical experts …, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor." Spruill, 372 F.3d at 236.

Here, the evidence proffered by the parties establishes that, throughout the period of time at issue, Plaintiff was receiving ongoing treatment from numerous medical doctors who provided varied forms of medical treatment, including recommendations for physical therapy, targeted nerve and pain medications, referrals for imaging tests to confirm the absence of gross changes in his condition subsequent to his 2011 surgery, and at least one lumbar epidural steroid injection. This course of treatment was reviewed by at least five doctors, each of whom indicated that conservative treatment was appropriate. Under the circumstances and evidence presented, it is apparent that, at the very least, genuine issues of material fact exist as to whether Defendant Smith, a non-medical prison official, "was justified in believing that the prisoner was in capable hands," such that she cannot "be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236.[8]

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for partial summary judgment [ECF No. 100] be denied.

---

[8] The Court feels compelled to express its displeasure with the lack of diligence exhibited by Defendant Smith's counsel in this matter. Not only did counsel fail to file a memorandum in opposition to Plaintiff's motion, as required by Rule 56 of the Local Rules of Civil Procedure, but counsel apparently did not find it appropriate to file a cross motion for summary judgment, even though a sound basis for one exists. As it now stands, the Court is only able to deny Plaintiff's summary judgment, thus leaving the claim for resolution at trial.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July 28, 2017

cc: The Honorable Barbara Rothstein
      United States District Judge